UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIFTON DAY,

                Plaintiff,                    Case No. 05-CV-71311

vs.                                           DISTRICT JUDGE DENISE PAGE HOOD
                                              MAGISTRATE JUDGE STEVEN D. PEPE

BENCY MATHAI, MICHIGAN
DEPARTMENT OF CORRECTIONS,
CORRECTIONAL MEDICAL SERVICES,
UNITED CORRECTIONAL MANAGING CARE
INCORPORATED AND DEBBIE L. ROTH,

                Defendants.
_____/

**REPORT AND RECOMMENDATION ON
DEFENDANT, DR. MATHAI'S MOTION TO DISMISS (DKTS. # 77)**

Plaintiff, Clifton Day, is an inmate in the custody of the Michigan Department of

Corrections ("MDOC"). Plaintiff is an African-American male and a member of the Jewish faith

who alleges discrimination against him for his race and faith, as well as interference with his

religious practice. On April 5, 2005, he filed his complaint against Defendants under 42 U.S.C.

§1983 and 42 U.S.C. §1985 alleging violations of the First, Eighth, and Fourteenth Amendments

as well as statutory violations, breach of contract and various torts. He seeks damages and

injunctive relief. As noted below, there is some confusion of whether Dr. Mathai was earlier

dismissed from this case, and this report is written as if she were not and recommends dismissal

of all claims against her.

Defendant Dr. Bency Mathai ("Dr. Mathai") is one of five Defendants named in this suit.

A May 17, 2007, Report and Recommendation[1] is currently before District Judge Hood that, if adopted, would dismiss the claims against Defendants Debbie Roth ("Roth") and deny Plaintiff's efforts for reinstatement (Dkt. #83).

On August 24, 2005, the undersigned issued a Report and Recommendation recommending that "that Defendant Michigan Department Of Correction's Rule 12 Motion For Dismissal (Dkt. #8) be GRANTED IN PART with all claims being dismissed with prejudice against MDOC, except the RLUIPA and ADA (Due Process only) claims; and Plaintiff's complaint be DISMISSED for failure to exhaust administrative remedies under 42 U.S.C. §1997e" (Dkt. #42, p. 11). This Report and Recommendation did not address Defendant Roth's motion to dismiss instead noting that "Plaintiff has Failed to exhaust his administrative remedies against Defendants MDOC, CMS and United." *Id.* at 9.

Defendant Mathai had not been served yet at that time, and the Report and Recommendation did not address the claims alleged against her or recommend her dismissal. On September 30, 2005, District Judge Hood adopted this Report and Recommendation with regard to "the exhaustion issue only, the Court not reaching the remaining analysis" and granted the motions to dismiss filed by Defendants MDOC, Correctional Medical Services ("CMS") and Roth (Dkt. #50, p. 3). Judge Hood further ordered that this action "is dismissed with prejudice." *Id.*

---

[1] For the sake of clarity it is worth noting at the outset the Reports and Recommendations previously issued in this case: (1) August 24, 2005 Report and Recommendation (Dkt. #42) which was adopted on September 30, 2005 (Dkt #50); (2) January 25, 2006 Report and Recommendation (Dkt. #59) which was granted in part and denied in party on September 30, 2006 (Dkt. #62); (3) May 17, 2007, Report and Recommendation which has not been addressed by District Judge Hood.

At the time the undersigned filed the August 24, 2005, Report and Recommendation, Defendant Mathai had not yet been served. As such, the August 24, 2005, Report and Recommendation did not address Defendants Mathai. Yet, Judge Hood, in adopting the August 24 Report and Recommendation noted that "the Magistrate Judge reached the correct conclusion that Plaintiff has failed to exhaust his administrative remedies on all the claims Plaintiff raised in his Complaint" even though the claims against Defendant Mathia were not addressed in the Report and Recommendation (Dkt. #50, p. 1).

Following Judge Hood's September 30, 2005, Order adopting the August 24, 2005, Report and Recommendation and her Judgment in Favor of Defendant (Dkts. #50 & #51), Defendants MDOC and CMS were terminated from the suit. Yet, Defendant Mathai was not terminated.

On January 25, 2006, the undersigned issued a Report and Recommendation (Dkt. #59) denying Plaintiff's motion to reinstate (Dkt. #52). On September 30, 2006, Judge Hood issued an Order granting in part and denying in part this Report and Recommendation (Dkt. #62). In the Order Judge Hood stated that:

> after careful review and consideration, the Court finds that the Magistrate Judge reached the correct conclusion for the proper reasons. All of Plaintiff's claims except the claims against Defendant Nurse Debbie Roth, must be dismissed due to his failure to exhaust administrative remedies, except for Plaintiff's RLUIPA and ADA claims.

(Dkt. #62, p. 3).

Given this Order, Defendant Roth is still party to this suit. Yet, again as with the September 30, 2005, order of Judge Hood, Defendant Mathai would appear not to be a party. Yet, apparently believing she was still a party to this suit, Defendant Mathai, on January 26,

2007, waived service (Dkt. #72), and on March 19, 2007, filed a motion to dismiss (Dkt. #77). On March 21, 2007, the undersigned issued an order requiring Plaintiff's response to Defendant Mathai's motion to dismiss (Dkt. #78). On March 30, 2007, the undersigned issued an order extending time for Plaintiff's response (Dkt. #81).

On May 17, 2007, the undersigned issued a Report and Recommendation that is currently before District Judge Hood (Dkt. #83). If adopted this, Report and Recommendation would dismiss Plaintiff's motion for reinstatement, grant Defendant Roth's motion to dismiss and dismiss Plaintiff's complaint. Adding to the confusion, my May 17, 2007, Report and Recommendation, drawing upon Judge Hood's Order, indicated that Defendant Mathai was not a party.

> On March 19, 2007, Defendant Mathai submitted a motion to dismiss wherein Defendant alleged, among other things, failure to exhaust (Dkt. #77). Plaintiff was ordered to respond on or before April 16, 2007 (Dkt. #78). As of today's date, no response has been filed. This motion is not addressed in this Report because Judge Denise Page Hood's September 30, 2006, order directed that all claims except those against Defendant Roth be dismissed for failure to exhaust (Dkt. #62). Therefore, the claims against Defendant Mathai have already been dismissed and this Report recommends that Plaintiff's request for reinstatement of the case be denied.

(Dkt. #83, fn. 1).

Even after this May 17, 2007, Report and Recommendation was issued, Defendant Mathai proceeded as if she was still party to this suit. On July 17, 2007, Defendant Mathai filed a Response to Defendant's Objection to the Magistrate's May 17, 2007, Report and Recommendation (Dkt. #87). In this Response, Defendant Mathai asked that this Court "dismiss this matter with prejudice" with regard to Defendant Mathai for failure to make progress under Federal Rule of Civil Procedure 41(c). Defendant's response suggests that even after the

undersigned's filing of three Report and Recommendations as well Judge Hood's September 30, 2005, Order, Defendant Mathai considered herself party to this suit.

On September 7, 2007, Plaintiff filed a motion for extension of time to file a response to Dr. Mathai's motion to dismiss (Dkt. #90). Regrettably and without excuse, no action was taken on this motion until January 31, 2008, when Plaintiff's motion for an extension of time was granted (Dkt. #97). On February 5, 2008, Defendant, Dr. Mathai, filed a motion to clarify the undersigned's order (Dkt. #98). In this motion, Defendant Mathai referred to the May 17, 2007, Report and Recommendation which suggested that Defendant Mathai had been dismissed from the suit on September 30, 2006. *Id.*

To put an end to this confusion, the present Report and Recommendation proceeds as if Defendant Mathai is still party to this suit; however, for the reasons discussed below, **IT IS RECOMMENDED** that Defendant Dr. Mathai's motion to dismiss (Dkt. #77) be **GRANTED** and that Plaintiff's complaint be **DISMISSED**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

In a previous action, 03-CV-73206, Plaintiff joined with two other inmates in the custody of the MDOC who were members of the Jewish faith in alleging various forms of discrimination against them for their faith, and interference with their religious practices and customs. On August 27, 2003, they filed a 34 paragraph complaint against 37 Defendants under 42 U.S.C. §1983 alleging multiple violations of the First, Eighth, and Fourteenth Amendments during the period of July 2001 through December 2002. They sought damages and injunctive relief. The defendants in that action filed motions for dismissal under Fed. R. Civ. P. 12(b) or summary judgment under Fed. R. Civ. P. 56(b). The motions were originally granted in part and denied in

part, with the Plaintiffs' exhausted claims being dismissed with prejudice and the unexhausted claims being dismissed without prejudice (Dkt #152). Upon motion for reconsideration, and in light of the *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005), opinion, the Court dismissed the entire complaint without prejudice so that the unexhausted claims could be fully exhausted on June 30, 2005 (Dkt. #157).

In the current case before this Court, Plaintiff names five defendants (none of whom were named in the previously dismissed lawsuit): Dr. Mathai, Roth, CMS, United and MDOC. Plaintiff lists thirteen counts stemming from the medical care he has received while incarcerated:

1. Violation of the right to exercise religion; to seek redress through administrative grievances without repercussion; to access to the court,
2. Medical malpractice, based within denial of my religious liberty;
3. Negligence/Gross Negligence
4. Malice for the person of the plaintiff;
5. Beach of contract with a governmental agency; failure to monitor custodial duties within health care provinces and actions by the defendants;
6. Fraud and deceit;
7. Deliberate indifference;
8. Intentional infliction of emotional distress;
9. Failure to protect;
10. Violation of the Equal Protection Clause of the 14th Amendment;
11. Right to Eighth Amendment liberty protecting from cruel and unusual punishment;
12. Violation of the 42 U.S.C. § 2000cc-1(a)(1)-(2) ("RLUIPA")
13. Violation of the Americans with Disabilities Act, (ADA) (42 U.S.C. §1981)

(Plaintiff's Complaint, p. 2).

In his Statement of Facts, Plaintiff alleges that the defendants were "personally and professionally" involved, and either acted "willfully and knowingly or failed to act to stop said violations." (Plaintiff's Complaint, p. 3). Apart from background facts, Plaintiff offers the following as the totality of specific factual allegations in support of his complaint:

6

(6) Plaintiff was subjected to invasive derision, malice and contempt from the defendants, because he is an African-American, who practices the Jewish faith.

(7) The plaintiff was subjected to undue pain, risk of permanent injury. . . due to the defendant's exhibiting and implementing "cookie-cutter" policies designed to show and provide indifferent medical-care because the plaintiff is incarcerated. Further, the defendants exhibits (sic) a failure to respond to needed medical care requests by the plaintiff to same, due [to] the plaintiff's refusal to renounce his religious beliefs, proscriptions and diet.

(8) The plaintiff is currently diagnosed with several chronic illnesses . . . which require constant monitoring, of which the defendants refused to do, or failed to do.

(9) The defendants unwittingly denied the plaintiff of life-saving medications, subjecting the plaintiff to inclement weather and other blandishments designed to demean, embarrass or otherwise harm his person, and cause emotional distress, without making the required adjustments to the level of patient care necessary.

(10) Defendants Roth and Dr. Mathai, colluded to deny medical care with employees of the Michigan Department of Corrections, because of other pending litigation of the plaintiff. These actions were meant to cause irreparable harm to the person of the plaintiff.

(11) Defendants "United" and "CMS" acted to further endanger the plaintiff, through the issuance of directives, memoranda and other policy to "cut costs" and not permit most on-going health concerns. Further, these directives caused the plaintiff to not receive the level of care, he would have gotten within the community.

(12) Defendant "MDOC" as custodian of the plaintiff, failure to protect the plaintiff from the actions of their employees, and the actions/inactions of their contractors. Therefore, within its capacity as custodian the plaintiff is duty bound to respond and protect their wards.

(13) The defendants "MDOC" through the actions of their employees served to provide usury information to defendants Roth and Dr. Mathai, designed to compromise the level of care provided, and further endanger the livelihood of the plaintiff. (Plaintiff's Complaint, pp. 4-7).[2]

Plaintiff seeks injunctive and declaratory relief and monetary damages in the amount of

"$100,000 for each count/claim, defendant. . ." (Plaintiff's Complaint, pp. 6-7).

Defendant Dr. Mathai has filed a motion for dismissal pursuant to Fed. R. Civ. P. 12(b)

and 42 U.S.C. §1997e(a) alleging that she is entitled to dismissal due to Plaintiff's failure to

---

[2]Plaintiff also attached several inches of unindexed and unorganized documents which apparently chronicle his visits to the prison health care system and the grievances he has filed with MDOC.

properly exhaust his administrative remedies, and failure to make particularized averments of wrongdoing as required to state a §1983 claim (Dkt. #77).

II.     <u>ANALYSIS</u>

A.      <u>Standard</u>

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b).  Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Prior to this year's cases of *Bell Atlantic Corp. v. Twombly,* 550 U.S. ----, 127 S.Ct. 1955, 1965 (2007)*,* and *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007), "the accepted rule" of pleading sufficiency was stated in *Conley v. Gibson*, 355 U.S. 41, 46 (1957), which stated "that a complaint should not be dismissed for failure to state a claim unless *it appears beyond doubt* that the plaintiff can *prove no set of facts* in support of his claim which would entitle him to relief." (Emphasis supplied.).  *Twombly* notes that under  a "literal reading of *Conley*'s 'no set of facts' standard,  a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  *Twombly* 127 S.Ct. 1955, 1968 (2007).  *Twombly* rejects this literal reading of *Conley* and required that pleadings state sufficient facts to show not just a possible, but a "plausible" claim of relief.  Instead of the 'no set of facts' standard of *Conley, Twombly* endorsed the standard that a complaint be plausible to the extent that from the facts alleged there is a " 'reasonably founded hope' " that a plaintiff would be able to make a case," citing *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 347  (2005) and its quote from *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741(1975).  Consistent with this clarification by *Twombly*, the Sixth Circuit has earlier noted that "[i]t is not enough for a

complaint under §1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir.1986). "A judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995). While in deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true" *Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir. 1996). The court is not required to accept as true alleged legal conclusions or unwarranted factual inferences. *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000); *see also Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993). As noted above, however, "while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.' " *In re DeLorean,* 991 F.2d at 1240 (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)).

## B.  Exhaustion Under the PLRA

Under the Prisoner Litigation Reform Act, a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." The Supreme Court clarified that a prisoner must follow the state corrections

system's procedures and *properly* exhaust all administrative remedies before he may bring an action in federal court. *Woodford v. Ngo*, 126 S. Ct. 2378 (2006). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. The *Woodford* Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 2388.

Thus, an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement. In *Jones v. Bock*, 127 S. Ct. 910 (2007), the Supreme Court overturned the Sixth Circuit's total exhaustion rule and its requirement that prisoners specifically plead exhaustion in their complaints. It may still be raised as an affirmative defense by defendants.

This Court must determine what grievances were exhausted and whether those that were exhausted involved the claims against Dr. Mathai that Plaintiff is asserting in this a suit. Then the Court must determine whether those exhausted claims adequately state a federal cause of action against Dr. Mathai.

III. **FURTHER ANALYSIS**

**A.      Exhaustion of Grievances:**

At the time of the incidents which give rise to the present action, Plaintiff was incarcerated at Parnall Correctional Facility in Jackson, Michigan, which is part of the MDOC. Prisoners at MDOC facilities are given the right to "[seek] redress for alleged violations of policy and procedure or unsatisfactory conditions," but prisoners making grievances must follow certain rules and deadlines. Policy Directive 03.02.130 Preamble. These requirements are laid out in MDOC Policy Directive, PD 03.02.130 (effective 12/19/03), Prisoner/Parolee Grievances (the "Policy Directive" or "PD").

The Policy Directive first requires that, within two business days of becoming aware of a grievable issue, a prisoner must first make an informal attempt to resolve it, unless he is prevented from doing so by circumstances outside of his control. PD 03.02.130(R). If he is dissatisfied with the result of this attempt, he may proceed to Step I of the grievance process. On a form supplied by MDOC, the prisoner must briefly describe the facts of the issue being grieved. PD 03.02.130(T). This form must be filed with a designated Grievance Coordinator within five business days of the prisoner's informal attempt at resolution. PD 03.02.130(X).

If the prisoner is dissatisfied with the Step I response, he may appeal to Step II by obtaining an appeal form within five business days of the response and submitting the appeal within five business days of obtaining the form. PD 03.02.130(DD). The Step II respondent is designated by the Policy Directive, such as the Parole Board Chairperson for grievances involving the Parole Board. If the prisoner is still dissatisfied after receiving the Step II response, he may appeal to Step III using the same appeal form. The Prisoner Affairs Section, on behalf of the MDOC Director, is the respondent for Step III appeals.

Plaintiff filed ten [3] grievances, six of which were ultimately rejected by the prison reviewers for being untimely, duplicative or not fully exhausted. A discussion of each grievance follows, categorized by those that are (i.) duplicative and (ii.) not exhausted at time of filing. There follows (iii.) an analysis of claims related to grievances that were properly exhausted by Plaintiff.

**(i.) Grievances that are Duplicative:**

If a grievance is duplicative of a previously filed grievance, the Policy Directive states that it will be rejected. PD 03.02.130(G)(1). The following grievances were rejected on account of their being duplicative:

1. SMT-04-07-0992-12D4 (Dkt. #1, p. 158): is dismissed as duplicative of Plaintiff's other grievances alleging inattention to Plaintiff's dietary needs (kosher and hypertension) and a denial of access to his medications. This grievance, it was noted, could have also been dismissed for having raised multiple unrelated issues.[4]

2. SMT-03-11-3671-12D4 (Dkt. #1, p. 1114-15): is dismissed as duplicative of Plaintiff's other grievances alleging inattention to Plaintiff's dietary needs (kosher and hypertension) and a denial of access to his medications.

3. SMT-04-09-1218-12D4 (Dkt. #1, p. 165): is dismissed as duplicative of Plaintiff's other grievances alleging inattention to Plaintiff's dietary needs (kosher and hypertension) and a denial of access to his medications.

---

[3] Only 9 of these grievances directly name Dr. Mathai per MDOC regulations in the initial grievance. However, this Court will consider grievance SMT-03-1-0050-12z (Dkt. #1, p. 148-51) which references Plaintiff's medical service provider (Dr. Mathai) but does not do so by name.

[4] If a grievance contains multiple, unrelated issues, the Policy Directive provides that it will be rejected. PD 03.02.130(G)(1). Thus, a prisoner may not use the grievance form to list out all the difference complaints he may have. A grievance must give the facility fair notice of the alleged misconduct so that it has the chance to provide a remedy. *See, e.g., Bell v. Konteh*, 450 F. 3d. 651, 654 (6th Cir. 2006). Listing in a single grievance multiple issues diminishes the prison's opportunity to correct the problem.

4.  SMT-04-07-0964-12E4 (Dkt. #1, p. 178-79): is dismissed as duplicative of Plaintiff's other grievances alleging inattention to Plaintiff's dietary needs (kosher and hypertension) and a denial of access to his medications. This grievance could also be dismissed based on a failure to exhaust given that it was not appealed past Step II.

5.  SMT-04-07-993-28A (Dkt. #1, p. 160-62): is dismissed as duplicative of Plaintiff's other grievances alleging inattention to Plaintiff's dietary needs (kosher and hypertension) and a denial of access to his medications. This grievance could also be dismissed based on a failure to exhaust given that it was not appealed past Step II.

**(ii.) <u>Claims Not Exhausted by Time of Filing:</u>**

The Policy Directive requires a prisoner to comply with certain deadlines in order to exhaust his administrative remedies. An informal attempt at resolution must be made within two business days of the prisoner's first becoming aware of a grievable issue. PD 03.02.130(R). The Step I form must be filed within five business days of the informal attempt; if the prisoner is dissatisfied with the Step I response, he has only five business days after receiving the response to obtain an appeal form and another five days to file a Step II appeal. PD 03.02.130(X), (DD). A prisoner has 10 business days after receiving a Step II response to file a Step III appeal. PD 03.02.130(HH). Because the informal attempt must be made no later than two business days after the prisoner first becomes aware of an issue, whether or not an issue is ongoing makes no difference in the application of the deadlines. A prisoner cannot excuse the delay beginning the grievance procedures by calling the issue "ongoing."

A grievance submitted beyond the time frames established by the Policy Directive will be rejected unless "there is a valid reason for the delay; e.g. transfer." PD 03.02.130(G)(4). If a prisoner does not comply with these deadlines, he has not exhausted his administrative remedies. *Woodford*, 126 S. Ct. at 2386.

The following grievances were dismissed for failure to follow the Policy Directive's time frames:

6.      Grievance No. SMT-03-11-3706-12I (Dkt. #1, p. 101): is dismissed from the suit because it was not exhausted when Plaintiff filed the present suit (04/05/2005). This grievance claimed an "ongoing" date of incident over a period of at least two months. This grievance could have also been rejected as duplicative.

Given Plaintiff's failure to properly follow the MDOC's grievance process, the following grievances were properly dismissed by the MDOC:

1. SMT-04-07-00993-28A
2. SMT-03-11-3671-12D4
3. SMT-04-07-0992-12D4
4. SMT-04-09-1218-12D4
5. SMT-04-07-0964-12E4
6. SMT-03-11-3706-12I

(iii.) **Grievances That Were Fully Exhausted:**

Grievances SMF-03-09-3336-12D4, SMT-03-09-3337-12H, SMT-04-1-0050-12Z and MST-03-113672-12D4 allege that Dr. Mathai retaliated against Plaintiff by restricting his access to blood pressure medication and by denying him a diabetic and kosher diet (Dkt. #1, p. 78-85, 88-94 and 108-12). While these grievances are largely duplicative, citing the same instances and making the same claims, MDOC did not dismiss these complaints for this reason. Instead, these grievances were processed through Step III.

1.      *Plaintiff's Eighth Amendment  Claim*:

A claim made by a convicted prisoner that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97 (1976). To state a §1983 claim for a violation of a prisoner's Eighth Amendment rights due to

inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. *Wilson* v. Seiter, 501 U.S. 294, 297 (1991); *Estelle*, 429 U.S. 97.

In *Estelle*, the Supreme Court concluded that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, which violates the Eighth Amendment. *Id*. at 104. The *Estelle* Court recognized that even in less serious cases, where the prisoner does not experience severe torment or a lingering death, the infliction of unnecessary suffering is inconsistent with standards of decency. *Id*. at 103. Specifically, the Supreme Court stated: "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

"The standard enunciated in *Estelle* is two-pronged: '[i]t requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious.' " *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir.1987), quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978). In examining the grievances which Plaintiff properly exhausted, it is clear that none of the respective claims brought in this case raised by the Plaintiff meet the standard articulated by *Estelle*.

In grievance SMT-03-09-3337-12H, filed on September 29, 2003, Plaintiff asserted that "Dr. Mathai is arbitrarily and capriciously denying" his diabetic diet (Dkt. #1, p. 88). In response to this grievance, the reviewer noted that the first step in obtaining a diabetic diet for Plaintiff was for him to meet with a dietician. *Id.* at 89. On September 22, 2003, Plaintiff was referred to a dietician. Plaintiff filed this grievance on September 29, 2003, a week after his

referral to the dietician.[5]  Obviously, referral of a patient to a dietician before placing them on a restricted diet cannot constitute deliberate indifference to a serious medical condition.  Plaintiff's conclusory assertions fail to assert facts that constitute deliberate indifference to a serious medical need.

In grievance SMF-03-09-3336-12D4, filed on September 24, 2003, Plaintiff alleged that Defendant, Dr. Mathai called him a "fat hog[6]," and denied him access to his medicine requiring that he come to health services to obtain his medication (Dkt. #1, p. 78).  Review of the record revealed that Plaintiff suffers from hypertension.  *Id.* at 79.  Given concerns that Plaintiff was not taking his blood pressure medicine, Dr. Mathai apparently placed Plaintiff on restricted access requiring that he come pick up his medicines so that he would be supervised taking them.  *Id.* at 83.  Having a patient obtain his medications under supervision as to time, dosage and compliance again is not indifference to a serious medical need.  Indeed this practice seemed to have been beneficial for plaintiff's blood pressure[7] Again Plaintiff's assertions failed to assert facts that could demonstrate that Defendant Mathai's actions constituted deliberate indifference

---

[5] Prison records show that Plaintiff was purchasing many high sodium snacks at the same time he was requesting a modified diet.  Consuming such snacks increases blood pressure and Plaintiff's  failure to refrain from eating such snacks affects the MDOC's decision about providing Plaintiff with a diabetic diet as the benefits of such a diet could be undermined by Plaintiff's snacking habits.

[6] Responses to Plaintiff's grievance do not address his allegation of name calling and instead treats the complaint as solely addressing Plaintiff's access to medicine.  In his grievance appeals, Plaintiff only addressed Dr. Mathai's requirement that Plaintiff come pick up his medicine and does not address any alleged instance of name calling.

[7] In a memorandum addressed to Plaintiff and dated December 5, 2003, Dr. Gregory Naylor, Chief of Medical Services, noted that Plaintiff's blood pressure readings are "favorable and under good control" and that he had seen a dietician who assessed his needs and then made recommendations based on that assessment (Dkt. #1, p. 99).

to his serious medical condition.

Grievance MST-03-113672-12D4 filed on November 4, 2003, is largely identical to grievance SMF-03-09-3336-12D4 in that Plaintiff claims that Dr. Mathai called him a "fat hog" and denied him access to his medicine(s) (Dkt. #1, p. 108-14). The record indicated that a witness was required to be present when Plaintiff was examined by a physician. *Id.* at 110. Ms. Crisenberry was present when Plaintiff was examined by Dr. Mathai, and she asserts that Defendant was not abusive to Plaintiff. Yet, it is not the asserted demeaning language by Dr. Mathai that Plaintiff's claims violate his rights, but rather the action and inaction of Dr. Mathai. As discussed previously, Dr. Mathai placing Plaintiff on restricted access to his blood pressure medicine requiring that he come pick up his medicines so that he would be supervised taking them would not involve any violation of the Eighth Amendment. Plaintiff has failed to assert sufficient facts to demonstrate that Defendant Mathai's actions concerning the blood pressure medication constituted deliberate indifference to his serious medical condition.

   2.   *Plaintiff's Other Claims*:

Plaintiff asserts that he was subject to (1) racial and religious discrimination, (2) conspiracy between Defendants Roth and Dr. Mathai (Dkt. # 1, p. 10-11) and (3) intentional infliction of emotional distress. Plaintiff has failed to assert sufficient facts to make out any of these allegations.

   A.   Equal Protection Violation

An equal protection claim must assert that the plaintiff suffered class-based discrimination. *See McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir.1990) ("To state a claim

under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class" (citation and internal quotation marks omitted)).  Plaintiff, in his complaint, asserted that he was discriminated because he was African American and practiced the Jewish faith.  For Title VII purposes both race and religion constitute protected classes.

Plaintiff has failed to articulate any actions which constitute discrimination based on his race.  Yet, the denial of kosher meals could constitute a claim of religious discrimination.  *See McEachin v. McGuinnis*, 357 F.3d 197, 203 (2nd Cir.2004) ("courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights").  That said, the topic of low sodium kosher and diabetic meals (Dkt. # 1, p. 105 - 113) was raised by Plaintiff in the context of his need for a diet that addressed his health problems.  Denial of kosher meals could constitute discrimination due to his religious faith, but Plaintiff's allegations do not demonstrate that he is being discriminated based on his religious belief.  He alleges that he was treated unfairly as compared to other inmates. Yet, not all inmates requested a kosher meal.  If he is claiming he was treated different from other Jewish inmates, it would not appear that his religion was the factor causing the different treatment because all of the comparable inmates would also be Jewish.  Obviously, merely being an inmate, in and of itself, does not involve any protected class status classification triggering equal protection issues.  Plaintiff has failed to state a claim as to equal protection under 42 U.S.C. §1983.

By all appearances, the record suggests that Plaintiff met with a dietician and had dietary recommendations made to him.  It appears that Plaintiff may have continued to purchase high

sodium, non-kosher snacks. The Kosher Meal Program of the Michigan Department of Corrections ("MDOC") is regulated by Policy Directive 05.03.150(W). *See* Policy Directive 05.03.150(W): "A prisoner approved to eat from a religious menu shall have that approval rescinded if s/he eats, or has in his/her possession, any food item that violates a tenet of his/her designated religion."

Inmates who are approved to participate in this program receive kosher meals. Inmates may be removed from the program for various reasons, including because they are observed eating or possessing non-kosher food. The Directive notes that approval for an inmate to eat from a "religious menu" will be rescinded if the inmate eats or possesses food that violates the inmate's religion. The response to Plaintiff's Step I grievance noted that "copies of his store orders were obtained and the charting indicates that he is eating non-kosher items from the store; therefore, there is no medical indication for him to have a kosher diet. Now he is grieving for a diabetic diet again. His store orders are entered into his health record." *Id.* at 105.

This Circuit had held that an inmate's First Amendment rights are not violated when, after finding that they had purchased non-kosher snacks, they were denied access to a kosher meal. *See Russell v. Wilkinson*, 79 Fed.Appx. 175 (6th Cir. 2003); *See Berryman v. Granholm*, Slip Copy, 2007 WL 2259334, *16 (E.D. MI 2007) (citing *Wilkinson,* Chief Judge Friedman held "that this authority is sufficient to allow a reasonable official in the Defendants' position in this case to believe that removing Plaintiffs from the kosher meal program would not violate their First Amendment rights" even when Plaintiffs' claimed that they were not eating the snacks they purchased.). It is also unclear how Dr. Mathai was involved in this denial of kosher meals which appears to have been the result of an MDOC policy.

Further, Plaintiff has not shown that the denial of his kosher meal constitutes a substantial burden as required by the Religious Land Use for Institutionalized Persons Act ("RLUIPA"). RLUIPA states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... unless the government demonstrates that imposition of the burden on that person- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling that governmental interest.

42 U.S.C. § 2000cc-1(a).

Congress did not intend that the RLUIPA would undermine prison operations. Rather, "should inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." *Cutter*, 125 S. Ct. at 2125 (2005); *See also Hoevenaar v. Lazaroff*, 422 F.3d 366, 370 (6th Cir. 2005) (quoting *Murphy v. Mo. Dept. of Corr.*, 372 F.3d 979, 987 (8th Cir. 2004) (citing 146 Cong. Rec. S6687 (daily ed. July 13, 2000) (statement of Senator Hatch))) (internal quotes removed) ("Congress, in passing the RLUIPA, evinced a desire to continue its goal of not overly burden[ing] prison operations, but rather intended to provide as much protection as possible to prisoners' religious rights without undermining the security, discipline, and order of those institutions."); *See also Cutter*, 125 S.Ct. at 2123 (2005) (noting that Congress intended for courts to give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.") (quoting 146 Cong. Rec. S7775 (daily ed. July 27, 2000) (joint statement of Senator Hatch and Senator Kennedy on RLUIPA) (quoting S.Rep. No. 103-111, at

10 (1993), reprinted in 1993 U.S.C.C.A.N. 1892, 1899, 1900)).

In the present case it must be determined whether any restrictions or denial of Plaintiff's having access to a kosher meal constitutes a "significant burden" on his exercise of religion. The Eleventh Circuit sets out an extensive history of the meaning of "substantial burden":

> The Supreme Court's definition of "substantial burden" within its free exercise cases is instructive in determining what Congress understood "substantial burden" to mean in RLUIPA. The Court's articulation of what constitutes a "substantial burden" has varied over time. *See, e.g., Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 450, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) (indicating that no substantial burden exists where regulation does not have "a tendency to coerce individuals into acting contrary to their religious beliefs"); *Hobbie v. Unemployment Appeals Comm'n of Fla.,* 480 U.S. 136, 141, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987) (finding substantial burden when government put "substantial pressure on an adherent to modify his behavior and to violate his beliefs"); *Thomas v. Review Bd. of Ind. Employment Sec. Div.,* 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981) (same); *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (finding a substantial burden when an individual is required to "choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion ... on the other"); *but see Bowen v. Roy,* 476 U.S. 693, 707-08, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986) *1227 (finding no substantial burden where government action interfered with, but did not coerce, an individual's religious beliefs); *Lyng,* 485 U.S. at 452, 108 S.Ct. 1319 (same).
>
> We have held that an individual's exercise of religion is "substantially burdened" if a regulation completely prevents the individual from engaging in religiously mandated activity, or if the regulation requires participation in an activity prohibited by religion. *See Cheffer v. Reno,* 55 F.3d 1517, 1522 (11th Cir.1995) (applying the Religious Freedom Restoration Act, we found no substantial burden when religion did not require particular means of expressing religious view and alternative means of religious expression were available); *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater,* 2 F.3d 1514, 1550 (11th Cir.1993) (finding a substantial burden when regulation had the effect of mandating religious conduct).
>
> In interpreting the same provision of RLUIPA as we have before us today, the Seventh Circuit recently declared:
>> in the context of RLUIPA's broad definition of religious exercise, a land-use regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise – [ ] –

> effectively impracticable.
>
> *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir.2003) (hereinafter " *CLUB* ").
>
> While we decline to adopt the Seventh Circuit's definition [ ] - we agree that "substantial burden" requires something more than an incidental effect on religious exercise. The combined import of these articulations leads us to the conclusion that a "substantial burden" must place more than an inconvenience on religious exercise; a "substantial burden" is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct.

*Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1226 -1227 (11th Cir. 2004) (footnotes and certain text omitted).

After a similar extensive review of the case law on the subject of "substantial burden" on the exercise of religion, the Fifth Circuit concluded:

> for purposes of applying the RLUIPA in this circuit, a government action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs. And, in line with the foregoing teachings of the Supreme Court, the effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs. [ ] We emphasize that no test for the presence of a "substantial burden" in the RLUIPA context may require that the religious exercise that is claimed to be thus burdened be central to the adherent's religious belief system.

*Adkins v. Kaspar,* 393 F.3d 559, 569-70 (5th Cir. 2004) (*footnotes omitted).*

*See also Murphy v. Missouri Dept. Of Corr.*, 372 F.3d 979, 988 (8th Cir.) cert. denied, 543 U.S. 991 (2004) (No. 04- 6293) ("To constitute a substantial burden, the government policy or actions: must 'significantly inhibit or constrain conduct or expression that manifests some central

tenet of a [person's] individual [religious] beliefs; must meaningful curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion.' ");  *Henderson v. Kennedy,* 265 F.3d 1072, 1074 (D.C.Cir.2001) (denying a petition for rehearing in a suit under the still valid portion of the RFRA, the court stated that the amendments to the definition of "religious exercise" did not alter the propriety of inquiring into the importance of a religious practice when assessing whether a substantial burden exists).

If an inmate demonstrates that a sincerely held religious belief is substantially burdened by a prison regulation, the court must weigh the proffered justification for the burden with due deference to the security and other administrative concerns of prison officials. In this regard the Supreme Court has indicated:

> We have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns.... Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions.... They anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."

*Cutter v. Wilkinson*, 544 U.S. 709, 722-23, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005) (citations omitted).

If an inmate chooses to purchases and consume non-kosher snacks, he cannot show that a MDOC policy of denying kosher meals to him constitutes a substantial burden on his ability to practice the tenets of his faith.   Plaintiff has failed to assert sufficient facts to demonstrate that Dr. Mathai violated plaintiff's rights under RLUIPA. Accordingly, **IT IS RECOMMENDED** that

both Plaintiff's equal protection claim and his RLUIPA claim based on the denial of kosher meals be **DISMISSED**.

        B.      <u>Conspiracy</u>

A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. *Feaheny v. Caldwell*, 175 Mich.App. 291, 307, 437 N.W.2d 358 (1989). While Defendants Dr. Mathia and Nurse Roth worked in the same prison medical facility, Plaintiff has failed to assert sufficient facts to demonstrate that they came together in pursuit of any unlawful action against Plaintiff. Plaintiff has not articulated what precisely were the unlawful actions taken by Defendants. Accordingly, **IT IS RECOMMENDED** that Plaintiff's conspiracy claim against Dr. Mathai be **DISMISSED**.

        C.      <u>Intentional Infliction of Emotional Distress:</u>

With a claim of intentional infliction of emotional distress arising under Michigan law, the courts have generally identified the following elements of a *prima facie* claim: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Postell-Russell v. Inmont Corp.*, 691 F. Supp. 1, 3 (D. Mich., 1988) (quoting *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985)). Plaintiff fails to meet the requirements needed to state a *prima facie* claim. Plaintiff alleges a duty to refrain from inflicting emotional distress, but fails to give specifics in his complaint sufficient to support his claim. A claim for intentional infliction of emotional distress requires a finding of extreme and outrageous conduct, and the Michigan courts are "reluctant to find in any but the most egregious cases that conduct alleged as constituting intentional infliction of emotional distress

rose to the level of 'outrageous' behavior required to establish this tort." *Espinoza v. Thomas*, 189 Mich. App. 110, 120 (1991).  Given that Plaintiff has alleged no specific actions that constitute the intentional infliction of efmotional distress, **IT IS RECOMMENDED** that Plaintiff's claim of intentional infliction of emotional distress be **DISMISSED**.[8]

## IV.    Recommendation:

For the reasons discussed above, **IT IS RECOMMENDED** that Defendant Mathai's Motion to Dismiss **BE GRANTED** and Plaintiff's complaint be **DISMISSED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections on or before March 24, 2008,as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

---

[8] As an alternative this state tort claim could be dismissed under 28 U.S.C.§1367(c)(3) because Plaintiff's federal claims are being dismissed.  Yet, given the length of time this case has been pending and the clear lack of any merit of such a claim against Dr. Mathai, it is recommended this claim be dismissed for failure to state a claim upon which relief can be granted.

opposing party may file a response.  The response shall be not more than twenty (20) pages in

length unless by motion and order such page limit is extended by the Court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.


Dated: March 7, 2008                              s/Steven D. Pepe_____
Ann Arbor, Michigan                               United States Magistrate Judge


Certificate of Service


The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or
parties of record by electronic means or U.S. Mail on March 7, 2008 .


                                                  s/Jermaine Creary_____
                                                  Deputy Clerk